# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI GAMBRELL,<br>    Plaintiff,<br><br>v.<br><br>MICHELE NEEDHAM,<br>    Defendant. | CIVIL ACTION<br><br><br><br><br>NO. 17-2884 |

## MEMORANDUM OPINION

Plaintiff Lori Gambrell presses unjust enrichment, tort, and breach of contract claims against Defendant Michele Needham for their various joint real estate transactions. In one of these transactions, the parties signed an Operating Agreement and established a company together. However, after Defendant failed to pay Plaintiff proceeds from the company's sale of real estate and again failed to pay Plaintiff for her efforts in other real estate ventures, Plaintiff sued. Defendant, in response, has moved to dismiss some claims and also seeks to compel arbitration under the Operating Agreement. For the reasons described below, Defendant's motion to compel arbitration will be conditionally granted. As some of the claims must be arbitrated, the Court shall stay the case for reasons of judicial economy and delay resolution of the motion to dismiss, pending completion of the arbitration.

## I.    BACKGROUND[1]

Plaintiff Lori Gambrell and Defendant Michele Needham were romantically involved from 2008 to 2015, living together as domestic partners from 2010 to 2015. They also entered into a business relationship with each other in 2009, establishing Nut Ohio Investments, LLC.

---

[1] The following facts are taken from Plaintiff's complaint and are taken as true for purposes of the pending motions.

An Operating Agreement, which detailed how the company would function, included an arbitration provision governing dispute resolution of any controversy between Plaintiff and Defendant pertaining to Nut Ohio Investments.

The parties' first real estate venture was in Ohio, where Defendant purchased, in 2009, a home on Klotter Street in Cincinnati. About a year later, Defendant transferred the Klotter Street Property into Nut Ohio Investments. Between 2009 and 2011, Plaintiff invested over $90,000 for renovations to the Klotter Street Property. Plaintiff also made many trips to oversee the Klotter Street Property, to select materials and hire sub-contractors, and to manage the progress of and budget for the property. By 2011, Defendant transferred the Klotter Street Property from Nut Ohio Investments to herself so that she could finance the property. The Klotter Street Property was listed for sale, and the parties agreed that Plaintiff would be reimbursed for all improvements and expenses she made for the Klotter Street Property. However, after the Klotter Street Property was sold in 2014, Defendant retained all proceeds of the sale and deposited them in her own investment account. Although Defendant assured Plaintiff by email and texts that Plaintiff would be reimbursed for her efforts, Defendant has not to date paid Plaintiff any money related to proceeds of the Klotter Street Property sale.

Besides the Klotter Street Property, the parties purchased an apartment on 6th Street in Philadelphia in 2011 as their primary residence. They each paid half of the down payment and renovation costs for the 6th Street Property. By 2014, when they sold the property, Defendant agreed to pay Plaintiff for the contributions she made to it. But as with the Klotter Street Property, Defendant has not paid Plaintiff any money related to proceeds of the 6th Street Property sale.

Plaintiff sued to recover her financial investments and the cost of her unpaid labor for the Klotter Street and 6th Street Properties. Plaintiff asserts claims for conversion and breach of contract as to the 6th Street Property, and claims for promissory estoppel, unjust enrichment, conversion, and breach of contract as to the Klotter Street Property. In her complaint, Plaintiff has also asserted additional claims related to other properties that are not at issue for the pending motions. Defendant has moved to dismiss the conversion and breach of contract claims as to the 6th Street and Klotter Street Properties. Afterwards, in a separate motion, Defendant sought to compel arbitration of all the Klotter Street Property claims pursuant to the arbitration provision of the Nut Ohio Investments Operating Agreement.

## II.     LEGAL STANDARD

A motion to compel arbitration may be evaluated under either the motion to dismiss standard under Rule 12(b)(6) or the summary judgment standard under Rule 56. *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013). If it is "apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard." *Id*. Plaintiff's complaint cites to an Operating Agreement and relies on that document in asserting some of her claims against Defendant. In her motion to compel arbitration, Defendant has attached a copy of the Operating Agreement containing both Plaintiff's and Defendant's signatures. Plaintiff does not dispute the authenticity of the document, nor has she contended that the Operating Agreement is invalid. *Cf. id.* at 779 (applying summary judgment standard because plaintiff "came forth with enough evidence in response to [the defendants'] arbitration motion"). Accordingly, Defendant's motion to compel

arbitration shall be evaluated under the Rule 12(b)(6) standard, and only the complaint's allegations and the Operating Agreement will be considered. *See id*. at 772.

### III. DISCUSSION[2]

#### a. Applicability of the Federal Arbitration Act

A preliminary issue is whether the Federal Arbitration Act (FAA) applies to Defendant's motion to compel arbitration. An arbitration provision only comes within the purview of the FAA if there is some "interstate nexus." *Gov't of Virgin Islands v. United Indus. Workers, N.A.*, 169 F.3d 172, 176 (3d Cir. 1999). "The Supreme Court has stated that the FAA's reach coincides with that of the Commerce Clause." *Id.* (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995)). The FAA's reach is thus broad. *Id.*; *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) ("Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control.") (internal quotation marks omitted).

The FAA applies to the parties' Operating Agreement because it implicates interstate commerce "in fact" in two ways. *See Allied-Bruce Terminix*, 513 U.S. at 278-79. First, according to the Operating Agreement, Nut Ohio Investments is organized under Ohio law with its principal office in Mississippi. Nut Ohio Investments held title to the Klotter Street Property, located in Ohio, during part of the relevant time period of the parties' dispute. As such, Nut Ohio Investments operated in at least two states when conducting its business. Second, Plaintiff, a Mississippi resident, purports to have made thirteen trips to Ohio to oversee the Klotter Street Property's maintenance. Although Plaintiff contends that the FAA does not apply because the

---

[2] Jurisdiction is based on 28 U.S.C. § 1332. Plaintiff is a resident of Mississippi and Defendant is a resident of Pennsylvania. The amount in controversy exceeds $75,000.

parties, in their Operating Agreement, intended for Nut Ohio Investments to engage in business solely in Ohio, it is of no moment that "the parties did not contemplate an interstate commerce connection." *See id.* at 281. The FAA therefore governs the Operating Agreement's arbitration provision.

### b. Arbitrability

The FAA states that a "written provision" in a contract providing for "settle[ment] by arbitration" of a "controversy . . . arising out of" the contract is generally "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA favors arbitration as a method of resolving disputes. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, waiver of the right to compel arbitration is limited: "[A] party waives the right to compel arbitration *only* in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997) (emphasis added). The prejudice inquiry is guided by "six nonexclusive factors that courts should consider" to see if the defense of arbitration has been waived: "(1) the timeliness or lack thereof of the motion to arbitrate; (2) the extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which the party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery." *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 295 (3d Cir. 2016).

5

Defendant has not waived the right to compel arbitration for two reasons. First, Defendant's failure to compel arbitration in her prior two motions to dismiss does not automatically waive her right to compel arbitration now. *See Chassen*, 836 F.3d at 295 (holding that doubts about scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand is . . . any allegation of *waiver*, *delay*, or a like defense to arbitrability) (emphasis added); *Peltz v. Sears, Roebuck & Co.*, 367 F. Supp. 2d 711, 721 (E.D. Pa. 2005) (concluding that "the fact that [defendant] did not raise the issue of arbitration in its motions to dismiss is not controlling."). Second, Plaintiff would not be prejudiced by the arbitration under the six factors enumerated in *Chassen*. 836 F.3d at 295. Defendant moved to compel arbitration less than four months after filing the complaint. And prior to exchanging discovery documents, counsel for Defendant informed opposing counsel that he intended to compel arbitration as to the Klotter Street Property claims. The parties also have not engaged in non-merits motion practice, and this Court has not made any pretrial orders besides those related to judicial housekeeping. Finally, although the parties have apparently engaged in discovery, at the time Defendant moved to compel arbitration, respective counsel for the parties has not taken depositions. Defendant thus has not waived the arbitration provision.

A motion to compel arbitration requires "a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Because Plaintiff relies on the Operating Agreement in support of her breach of contract claim and does not otherwise contend that it is invalid, the principal question is whether the arbitration provision extends to the Klotter Street Property claims.

Questions of arbitrability, including whether the controversy at issue may be arbitrated, are "presumptively committed to the court." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178-79 (3d Cir. 2010) (en banc) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)). As "arbitration is a creature of contract law," the question is whether the arbitration agreement binds Plaintiff under "traditional principles of contract law." *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001). Ohio contract law here governs, as provided for in the Operating Agreement's choice-of-law clause.[3] If a contract contains an arbitration clause, "there is a presumption of arbitrability . . . unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650. In short, "[d]oubts should be resolved in favor of coverage." *Id.*

Under Ohio's plain meaning rule, the Nut Ohio Investments arbitration provision applies to Plaintiff's Klotter Street Property claims. *See Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 245-46 (Ohio 1978) ("[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument."). The arbitration provision is worded broadly, applying to "[a]ny controversy between the [Plaintiff and Defendant] relating to this Agreement or the transactions contemplated hereby." Disputes about how much Plaintiff is owed for her ownership stake in Nut Ohio Investments – which, as Plaintiff alleges, included the Klotter Street Property – fall well within the purview of the arbitration provision. Plaintiff's allegations in support of her breach of contract claim (Count X)

---

[3] A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). As this Court sits in Pennsylvania, Pennsylvania's choice-of-law principles apply. Pennsylvania courts typically "honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Id.*

7

assert that the Klotter Street Property was part of a joint real estate venture governed by the Nut Ohio Investment's Operating Agreement. Similarly, her promissory estoppel (Count II) and conversion (Count IX) claims refer to the Klotter Street Property being a joint real estate venture between the parties. As to Plaintiff's unjust enrichment claim (Count IV), it seeks to recover her investments and labor put into the Klotter Street Property. This necessarily involves a controversy relating to the "transactions contemplated" by purchase of the Klotter Street Property. Indeed, while the Klotter Street Property was still held by Nut Ohio Investments, Plaintiff made substantial investments in the Property's renovations and made several trips to Ohio to oversee the maintenance.

"[A] district court does not issue an order compelling arbitration in the abstract." *Puleo*, 605 F.3d at 181. Rather, the arbitration must proceed "in the manner provided for in [the parties'] agreement." *Id*. (quoting *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475 (1989)). While the Klotter Street Property-based claims fall within the scope of the arbitration provision, the provision itself requires that the parties first mediate for ten hours before arbitration proceeds. Accordingly, the parties shall, in accordance with their agreement, if they have not done so already, engage in ten hours of mediation in an effort to resolve their disputes.

Although Defendant has not a requested a stay of this litigation, which would be automatic under the FAA, 9 U.S.C. § 3, this case shall be stayed until the parties complete arbitration. *See First Nonprofit Ins. Co. v. Alexander*, 2009 WL 2256473, at *4 (E.D. Pa. July 27, 2009) (noting that stays may be issued sua sponte); *Maurer v. Int'l Union United Auto.*, 487 F. Supp. 731, 740 (M.D. Pa. 1979). Staying the case will promote judicial efficiency and ease the burden on the parties, as they will not need to litigate this case piecemeal in a separate state.

8

Moreover, the parties may decide to resolve this dispute in its entirety at arbitration. Because this case is stayed, the Court, at this juncture, will defer its decision on Defendant's motion to dismiss.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**

**Date:** 12/21/2017